## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Dial Technology, LLC,                            Case No. 13-cv-2995 (MJD/TNL)

              Plaintiff,

v.                                               **REPORT & RECOMMENDATION**

Bright House Networks, LLC,

              Defendant.

---

Jeffrey C. Thompson and Jacob R. Grassel, Howse & Thompson, PA, 3189 Fernbrook Lane North, Plymouth, MN 55447 (for Plaintiff); and

Sten-Erik Hoidal and Jessica L. Edwards, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402-1425 (for Defendant).

---

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint and to Transfer Venue (ECF No. 16). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b).

A hearing was held. Jacob R. Grassel appeared on behalf of Plaintiff. (ECF No. 25.) Sten-Erik Hoidal and Jessica L. Edwards appeared on behalf of Defendant. (*Id.*)

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Partial Dismissal of Plaintiff's

Amended Complaint and to Transfer Venue (ECF No. 16) be **GRANTED IN PART** and

**DENIED IN PART** as set forth herein.

## II. BACKGROUND[1]

Plaintiff Dial Technology, LLC is a Minnesota company that provides telemarketing services. (Am. Compl. ¶¶ 1, 2, ECF No. 12.) Defendant Bright House Networks, LLC provides cable television services in Florida. (*Id.* ¶ 3.)

In approximately June 2010, Defendant contacted Plaintiff about becoming a preferred vendor under Defendant's "Preferred Vendor Program," which was intended to foster the relationship between Defendant and well-performing vendors. (*Id.* ¶¶ 4, 7.) Defendant then "conducted a test campaign with three prospective vendors including Plaintiff." (*Id.* ¶ 8.) "Plaintiff significantly outperformed the other prospective vendors . . . ." (*Id.*) Defendant subsequently met with Plaintiff, toured Plaintiff's facilities, and "ma[de] certain representations to Plaintiff regarding Defendant substantially increasing call hours and call volume to be contracted to and through Plaintiff" as part of the Preferred Vendor Program. (*Id.* ¶ 9.)

At some point between the summer of 2010 and January 1, 2011, the parties entered into an agreement wherein, beginning January 1, 2011, Plaintiff would provide services to Defendant at a discounted hourly rate of $24.00 per hour and Defendant "promised 8,125 [call] hours per quarter and 32,500 hour[s] for one year to be contracted

---

[1] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 726 (8th Cir. 2014); *see also Rasmusson v. Chisago Cnty.*, No. 12-cv-0632 (SRN/JSM), ___ F. Supp. 2d ____, 2014 WL 107067, at *2 (D. Minn. Jan. 10, 2014) ("When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.").

to and paid to Plaintiff." (*Id.* ¶ 10; *see id.* ¶¶ 8, 9, 11, 13, 16.)  Plaintiff discounted its hourly rate based upon Defendant's representations regarding call volume.  (*Id.* ¶10.) Beginning January 1, 2011, Plaintiff added additional office space and employees, "incurring additional overhead and other expense," in order to provide the volume requested by Defendant.  (*Id.* ¶ 11.)

Defendant never provided the promised call volume.  (*Id.* ¶ 13.)  In the first quarter, Plaintiff realized only $112,000 of the expected $195,000 in revenue based on the inadequate number of call hours.  (*Id.*; *see id.* ¶ 30.)  Plaintiff incurred "significant losses and pecuniary damages . . . of more than $83,000 in the first quarter and greater losses in subsequent quarters."  (*Id.* ¶ 13.)  Plaintiff alleges that Defendant was instead giving Plaintiff's call hours to another company, Evergreen Marketing.  (*Id.* ¶ 17, 31.)

Plaintiff brings this action against Defendant for breach of contract, promissory estoppel, unjust enrichment/quantum meruit, and fraud/misrepresentation.  Defendant has moved to dismiss Plaintiff's contract and fraud claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Def.'s Mem. in Supp. at 1, ECF No. 18.)  Defendant also moves to have this matter transferred to the Middle District of Florida.  (*Id.* at 2.)  Plaintiff opposes the 12(b)(6) challenges and the request to transfer.  (Pl.'s Mem in Opp'n at 1-2, ECF No. 22.)

### III. STATEMENT OF A CLAIM

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d. 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "[A]lthough a complaint need not contain 'detailed factual

3

allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678.  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant."  *Raynor*, 690 F.3d at 955.

### A.  Contract Claim

Defendant asserts that Plaintiff's contract claim is barred by Minnesota's statute of frauds, Minn. Stat. § 513.01, because there is no writing and the alleged contract could not have been performed within one year of its making.[2]  (Def.'s Mem. in Supp. at 12; *see id.* at 12-15.)

---

[2] "For the sake of convenience, and because . . . Florida and Minnesota's laws are the same on the issues material to this Motion, [Defendant] cites to Minnesota law herein."  (Def.'s Mem in Supp. at 11 n.6.)  Thus, for purposes of this motion, Defendant does not dispute that Minnesota law applies to this matter.

Under Minnesota law, "an agreement 'that by its terms is not to be performed within one year from the making thereof' is unenforceable 'unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith.'" *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014) (quoting Minn. Stat. § 513.01). "'The test is simply whether the contract by its terms is capable of full performance within a year, not whether such occurrence is likely.'" *Bolander v. Bolander*, 703 N.W.2d 529, 547 (Minn. App. 2005) (quoting *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 375 (Minn. App. 1984)).

The Amended Complaint does not allege that the parties' agreement was reduced to writing and, in her memorandum in opposition, Plaintiff describes the contract as a "verbal agreement." (Pl.'s Mem. in Opp'n at 6.) Similarly, Plaintiff agreed at the hearing that the parties' agreement was an "oral contract." Accordingly, "if the parties agreement is not 'in writing,' then the agreement is enforceable only if it is capable of full performance within one year" of its making. *Twistmeyer*, 742 F.3d at 51. The one-year requirement applies to agreements which are to commence on a future date. *See Borchardt v. Kulick*, 48 N.W.2d 318, 321 (Minn. 1951) ("A contract for one year's services, commencing on the date of the contract, is not within the statute, but an oral contract for the performance of services for a term of one year, to begin in the future, is within the statue of frauds." (citation omitted)); *Shaughnessy v. Eidsmo*, 23 N.W.2d 362, 366 (Minn. 1946) ("An oral lease of real estate for a term of one year, to commence in future, is within the statute of frauds."); *O'Donnell v. Daily News Co. of Minneapolis*,

138 N.W. 677, 679 (Minn. 1912) ("For it is settled that a contract for services, which by its terms shows that it is not to be performed or is incapable of performance within one year from the making therefore, is within the statute while a contract for one year's services commencing on the date of the contract is not within the statute." (citations omitted)).

According to the Amended Complaint, the contract was to begin on January 1, 2011, and Defendant was to provide a certain volume of call hours per quarter for a one-year period. (Am. Compl. ¶¶ 11, 13, 16; *see also id.* ¶ 20.) Curiously, the Amended Complaint does not contain the date upon which the parties reached the alleged agreement. Plaintiff's President and CEO, Linda Baker, however, filed an affidavit in support of her opposition to Defendant's motion.[3] (Aff. of Linda Baker, ECF No. 23.) Baker's affidavit states, "On September 13, 2010, [Defendant's employee] Anissa Crowder confirms for me that [Defendant] has agreed to the discounted hourly rate I had proposed, which was $24.00/hour based upon a volume of 8,125 calls per quarter. *At this point, we had reached an agreement.*" (*Id.* ¶ 19 (emphasis added).) For purposes of this motion, Defendant does not dispute that the alleged agreement was entered into on September 13, 2010. (Def.'s Mem. in Supp. at 12 n.7, 13.)

---

[3] When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)). "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted).

With September 13, 2010 as the date of the "making thereof," the agreement had to be capable of full performance by September 13, 2011. *See* Minn. Stat. § 513.01; *Bolander*, 703 N.W.2d at 547. In a calendar year, the fourth quarter begins on October 1. The Court questions whether 8,125 call hours could be performed in a 24-hour period, but, even if the fourth quarter's requirements could be met on October 1, 2011, the first day of the quarter, the agreement is not capable of full performance by the one-year deadline of September 13, 2011. Because the agreement is not capable of being fully performed within one year of its making and there is admittedly no writing, Plaintiff's contract claim is barred by the statute of frauds. Minn. Stat. § 513.01; *Twistmeyer*, 742 F.3d at 51.

Plaintiff contends that the parties' agreement could have been performed in one year and

> was not for a specified period of time, whether it be one year, one month, or one day, but rather was an agreement arranged upon a yearly call volume of 32,500 call hours, which was to be monitored and paid based upon quarterly hours serviced by Dial Tech as provided by Bright House.

(Pl.'s Mem. in Opp'n at 6.) Relatedly, at the hearing, Plaintiff described the parties' agreement as an indefinite contract based on a number of call hours per year. These arguments, however, are inconsistent with the facts pleaded in the Amended Complaint, which refer to an agreement wherein Defendant promised "8,125 hours per quarter and 32,500 hour[s] for one year to be contracted to and paid to Plaintiff." (Am. Compl. ¶ 10; *accord id.* ¶¶ 16 ("to provide 8,125 call hours per quarter or 32,500 call hours per year"); 20 ("Defendant promised to pay 8,125 call hours per quarter and 32,500 for the first

year"); *see id.* ¶ 30 ("Defendant would provide that 8,125 hours per quarter and 32,500 hours per year call volume need to Plaintiff").   They are also contradicted by the statement immediately following the above passage in Plaintiff's memorandum:

> The terms of the contract were clear: [Defendant] would provide, or pay for, 8,125 hours *each quarter* resulting in 32,500 hours of telemarketing service, in aggregate, provided to [Plaintiff] *over the course of a year* in exchange for a reduced hourly rate.  The facts pled, if taken as true, are clear that this is a contract that is based upon a *guaranteed quarterly call volume* based upon annual projection.

(Pl.'s Mem. in Supp. at 6 (emphasis added); *see also id.* at 7 ("[Defendant] offered [Plaintiff] the opportunity to be a Preferred Vendor and to receive 8,125 hours of work to perform quarterly, or alternatively to be paid for 8,125 hours quarterly . . . .").)  Plaintiff states that the agreement was formed on September 13, 2010.  Plaintiff cannot escape the fact that there are four quarters in one year.  The agreement alleged in the Amended Complaint is incapable of performance within one year from its making because the fourth quarter of this one-year agreement commencing on January 1, 2011, is more than one year after the date of the agreement's formation.

Taking all of the facts in the Amended Complaint as true, Plaintiff has alleged the breach of a non-written agreement incapable of being fully performed in one year.  Such a claim is barred by the statute of frauds.  Therefore, the Court recommends that Defendant's motion be granted with respect to Plaintiff's contract claim.

### B. Fraud Claim

Defendant asserts that Plaintiff has failed to state a claim for fraud because the Amended Complaint does not plead facts showing a false representation of a past or future fact, only future events and expectations.  (Def.'s Mem. in Supp. at 16.)

In order to state a claim for fraud, Plaintiff must allege facts showing

> (1) a false representation by [Defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [Plaintiff's] reliance thereon; (4) that the representation caused [Plaintiff] to act in reliance thereon; and (5) that [Plaintiff] suffered pecuniary damages as a result of the reliance.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (citing *Hoyt Props., Inc. v. Prod. Res. Group, LLC*, 736 N.W.2d 313, 318 (Minn. 2007)); *accord Hubbard v. PNC Bank Nat'l Ass'n*, No. 13-cv-337 (MJD/JSM), 2013 WL 4781023, at *9 (D. Minn. Sept. 5, 2013) (same).   Plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "To assert a fraud claim with the particularity required under Rule 9(b), a complaint must allege in detail 'the who, what, when, where, and how' of the fraud."  *Stumm v. BAC Home Loans Servicing, LP*, No. 11-cv-3736 (PJS/LIB), 914 F. Supp.2d 1009, 1013 (D. Minn. 2012) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)); *accord Hubbard*, 2013 WL 4781023, at *9 (same).

"'It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or

event did not take place.'"   *Valspar Refinish, Inc.*, 764 N.W.2d at 368 (quoting

*Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)); *accord Int'l Travel*

*Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993) ("The general rule in

Minnesota is that broken promises are not actionable as fraud.").   A "[p]laintiff cannot

base a fraud claim on a party's statement of intention to act in the future."   *Wittkowski v.*

*PNC Mortg.*, No. 11-cv-1602 (MJD/JJG), 2011 WL 5838517, at *4 (D. Minn. Nov. 18,

2011); *accord Kramer v. Bruns*, 396 N.W.2d 627, 631 (Minn. App. 1986) ("Promises to

act in the future do not form the basis for a fraud action.").

Nevertheless,

> a misrepresentation of a present intention, for example in a
> promise to do something prospectively, could amount to
> fraud.  However, the failure to carry out such a promise with
> nothing more, does not constitute fraud; there must be
> affirmative evidence that, when the maker made the promise,
> he or she had no intention of keeping it.

*Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc.*, 58 F.3d 1306, 1312 (8th Cir.

1995) (citing *Vandeputte*, 216 N.W.2d at 147)); *see also Int'l Travel Arrangers*, 991 F.2d

at 1402 ("[A] claim of promissory fraud may lie if, when the promise was made, the

promisor then had no intention to perform it.").   Stated differently, "[a] misrepresentation

does not constitute fraud unless affirmative evidence indicates that the promisor did not

intend to perform at the time he or she made the promise."   *Kramer*, 369 N.W.2d at 631;

*accord Stumm*, 914 F. Supp.2d at 1014 ("For a promise to be fraudulent, the person

making the promise must, at the time the promise is made, not intend to fulfill the

promise.").

In pertinent part, the First Amended Complaint states:

> 30.   Defendant represented to Plaintiff that if Plaintiff supplied the requisite employees, training, equipment and capacity necessary to provide 8,125 call hours per quarter to Defendant, over a number of quarters in exchange for the payment of a reduced rate of $24 per hour, then Defendant would provide that 8,125 hours per quarter and 32,500 hours per year call volume need to Plaintiff, resulting in revenues of $195,000 per quarter to Plaintiff.
>
> 31.   While Defendant was representing to Plaintiff on one hand, through one set of agents that Defendant would provide certain call hours to Plaintiff, the Defendant at the same time, through other agents was giving Plaintiff's call hours to a third party, Evergreen Marketing, in numbers that made the representations to Plaintiff false when made.
>
> 32. These actions of Taylor Meringolo on behalf of Defendant, made the representations of Defendant['s] agents, Mark Guberman and Anissa Crowder[,] to be false and misleading representations of a then present material fact.

(Am. Compl.)

Defendant argues that the alleged misrepresentation concerning the amount of call hours to be provided to Plaintiff is a promise concerning a future event and is not actionable as a matter of law.  (Def.'s Mem. in Supp. at 17; *see also* Def.'s Reply at 4, ECF No. 24.)  Moreover, Defendant argues that Plaintiff has failed to plead facts showing that Defendant did not intend, at the time of the parties' agreement, to perform as promised.  (Def.'s Mem. in Supp. at 17; *see also* Def.'s Reply at 4-6.)  According to Defendant, the fact that Defendant was providing call hours to another vendor in 2010, while it was engaged in discussions with Plaintiff about a program set to begin in 2011,

does not demonstrate that Defendant did not intend to provide the allegedly promised call hours to Plaintiff in 2011.  (Def.'s Mem. in Supp. at 18; Def.'s Reply at 5-6.)

Plaintiff responds that, "[b]eginning in the Summer of 2010 and continuing through 2011, [Defendant's employees] Anissa Crowder and Mark Guberman[] were making commitments to [Plaintiff] regarding a guaranteed call[-hour] volume each quarter . . ." while at the same time Defendant's employee "Taylor Meringolo[] never intended to use, and ultimately refused to use, the services of [Plaintiff and] instead us[ed] the services of Evergreen Marketing . . . ."  (Pl.'s Mem. in Opp'n at 9.)  Plaintiff contends that, because the parties' negotiations were ongoing and extended into 2011, the Amended Complaint sufficiently alleges "a misrepresentation of a then-present fact rather than a misrepresentation of a future event or a simple broken promise."  (*Id.*) Additionally, Plaintiff contends that it can be reasonably inferred that Defendant did not intend to perform under the parties' agreement based on Defendant's use of another vendor during this time and "Plaintiff has attested to the fact that [Defendant] engaged a competing tele-services company after [Plaintiff] was told directly that the company would not be part of the Preferred Vendor Program."  (*Id.* at 9-10.)

The facts as pleaded in the Amended Complaint show that Defendant promised to provide a certain volume of call hours to Plaintiff per quarter in the future.  As pleaded in the Amended Complaint, the parties' negotiations took place between summer 2010 and January 1, 2011, when the program was to start.  (*See* Am. Compl. ¶¶ 7-9, 16.)  The facts in the Amended Complaint do not, as suggested in Plaintiff's memorandum, show that the negotiations continued into 2011.

12

"When a representation regarding a future event is alleged, as here, an additional element of proof is that party making the representation had no intention of performing *when the promise was made . . . ." Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) (emphasis added).  It is during this roughly six-month period prior to January 1, 2011, that Defendant allegedly made the "representations" and "promises" at issue to Plaintiff.  (*See, e.g.*, Am. Compl. ¶¶ 9, 10, 20, 22.)  It is during this same time period, "[w]hile Defendant was representing to Plaintiff on one hand . . . that Defendant would provide certain call hours to Plaintiff," that Defendant was using Evergreen Marketing.[4]  (*Id.* ¶ 31.)  Taking action inconsistent with one's commitments, like entering into an agreement with another vendor, can support a finding that a party had no intention of performing.  *Int'l Travel Arrangers*, 991 F.2d at 1403.  But, Plaintiff would have this Court use Defendant's contemporaneous acts of negotiating with Plaintiff and using another vendor *at a time prior to the commencement of the parties' agreement* to find that Plaintiff has plausibly alleged that Defendant did not intend to perform under the parties' agreement at the time it was made.  It cannot be reasonably inferred that Defendant had a "contemporaneous intention not to perform the promises" made to Plaintiff under an agreement to begin at a point in the future based on Defendant's use of another vendor's services while negotiating with Plaintiff and prior to the commencement of its alleged agreement with Plaintiff.  *See id.*

---

[4] The Court recognizes that Plaintiff has pleaded facts that Defendant continued to use Evergreen Marketing, rather than Plaintiff, after January 1, 2011.  (*See* Am. Compl. ¶ 17.)  For purposes of Plaintiff's fraud claim, however, the relevant inquiry is what Defendant was doing at the time the representations and promises were made to Plaintiff and the agreement was formed and whether Defendant's conduct act that time can be said to have manifested intent not to keep those promises in the future.

Based on the foregoing, the Court recommends that Defendant's motion be granted with respect to Plaintiff's fraud claim as Plaintiff has not alleged sufficient facts to show that Defendant did not intend to perform the promises made at the time they were made to Plaintiff. *See Exeter Bancorporation, Inc.*, 58 F.3d at 1312; *Int'l Travel Arrangers*, 991 F.2d at 1402; *Stumm*, 914 F. Supp.2d at 1014; *Martens*, 616 N.W.2d at 747; *Kramer*, 369 N.W.2d at 631.

## IV. TRANSFER VENUE

Defendant moves to transfer this matter to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Defendant asserts that transfer is appropriate because the majority of the key witnesses are located in the Middle District of Florida. (Def.'s Mem. in Supp. at 2; *see id.* at 5-9, 20-25.) Plaintiff opposes the transfer, stating that she is unable to bear the financial burden of litigating in Florida and Defendant has failed to meet its burden to show that transfer is warranted. The parties agree that this action could have been brought in either District. (Def.'s Mem. in Supp. at 20; Pl.'s Mem. in Opp'n at 11.)

### A.  Evidence Considered

"[T]he party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). Unlike a motion to dismiss, a request to transfer venue under § 1404(a) is not limited to a determination on the pleadings. A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents. *See, e.g.*, *One on One Basketball, Inc. v. Global Payments Direct, Inc.*, Civ.

Action No. 13-2020 (CKK), ___ F. Supp.2d ____, 2014 WL 1617707, at *3 (D. D.C. Apr. 23, 2014) ("[W]hen evaluating motions to transfer under § 1404(a), a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents."); *Lyngholm v. FedEx Ground Package Sys., Inc.*, 827 F. Supp.2d 912, 921 (S.D. Ia. 2011) (facts addressing materiality of witnesses' testimony and witnesses' accessibility with respect to forum to be provided "by way of affidavit or other information" (quotation omitted)); *Huang v. Napolitano*, 721 F. Supp.2d 46, 47 n.2 (D. D.C. 2010) ("In reviewing a motion to transfer under 28 U.S.C. § 1404(a), a court may consider undisputed facts outside the pleadings.").

Plaintiff and Defendant have each submitted affidavits in support of their respective positions. (*See generally* Baker Aff.; Decl. of Mark Guberman, ECF No. 19.) In addition, based on Plaintiff's claim of financial hardship, the Court ordered Plaintiff to provide certain corporate financial information under an attorneys'-eyes-only designation. (Ct. Minutes, ECF No. 25.) By agreement, Plaintiff's CEO, who is not personally named in this action, agreed to provide personal financial information for in camera review. (*Id.*) The Court has considered these documents in its analysis below.

## B. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is

warranted." *Terra Int'l, Inc.*, 119 F.3d at 695. "[A] transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues." *Id.* at 696; *see Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, No. 08-cv-5838 (MJD/JJG), 598 F. Supp.2d 989, 995 (D. Minn. 2009) (same). The Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider in making the transfer determination, but [has instructed] district courts [to] weight any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quotations and citation omitted); *accord Cosmetic Warriors Ltd. v. Abrahamson*, No. 10-cv-938 (RHK/JSM), 723 F. Supp.2d 1102, 1105 (D. Minn. 2010) ("A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted."). "There is no precise mathematical formula to be employed when balancing these factors, and a district court enjoys 'much discretion' when deciding whether to grant a motion to transfer." *Cosmetic Warriors, Ltd.*, 723 F. Supp.2d at 1105 (quoting *Terra Int'l, Inc.*, 119 F.3d at 697).

Moreover, "transfer motions should not be freely granted. A heavy burden rests with the movant to demonstrate why a case should be transferred. To satisfy that heavy burden, the movant must demonstrate that the relevant factors weigh strongly in its favor." *Id.* (quotations and citations omitted). "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Terra Int'l, Inc.*, 119 F.3d at 696-97 (quotation omitted). "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs

the inconvenience that [the] plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, No. 98-cv-2262 (DSD/JSM), 58 F. Supp.2d 1023, 1026 (D. Minn. 1999).

### C. Analysis

#### 1. Convenience of the Parties

Defendant asserts that "the inconvenience to [Plaintiff] of litigating in Florida is outweighed by the far greater inconvenience to [Defendant] if the case remains in Minnesota." (Def.'s Mem. in Supp. at 26.)  Defendant's argument with respect to this factor largely dovetails with its argument as to the convenience-of-witnesses factor, which the Court will address in the next section.  Defendant points to the expenses it will incur on account of the fact that three of its current employees are likely to be critical witnesses in this case, including travel, food, and lodging expenses as well as lost productivity.  *See In re Apple, Inc.*, 602 F.3d at 913 ("If Apple's California witnesses were required to travel to Arkansas, Apple would likely incur expenses for airfare, meals and lodging and losses in productivity from time spent away from work.").  Defendant also states that the relevant documentation is in Florida and the cost of "producing witnesses and documents will be significantly minimized by transfer to the Middle District of Florida." (Def.'s Mem. in Supp. at 27.)

Defendant asserts that CEO Baker is the person with whom Defendant corresponded and requiring her to travel to Florida is less burdensome than requiring multiple employees of Defendant to travel to Minnesota.  (*Id.*)  Defendant additionally asserts that Baker "has shown that she is able to easily make this trip" based on her

previous travels to Florida in connection with her dealings with Defendants.   (*Id.*)
Recognizing that Baker contends she is not financially able to incur the costs of litigation
in Florida, Defendant counters that her personal finances are irrelevant because she is not
a party and the expense of travel alone does not deprive a party of its day in court.   (*Id.*)

Plaintiff responds that it is a Minnesota corporation whose president and owner "is
a Minnesota citizen, taxpayer, and full-time resident."   (Pl.'s Mem. in Opp'n at 12.)
Plaintiff states that transferring this matter to the Middle District of Florida would
"greatly burden" itself and Baker.   (*Id.*)   Plaintiff states that it, along with Baker, have
"faced significant financial burdens due to the breach of the agreement by [Defendant]"
and neither Plaintiff nor Baker is able "to shoulder the economic burdens that would
result in a transfer of venue."   (*Id.*)   In addition, Plaintiff states that Baker is unable to pay
the travel expense of her essential non-party witnesses and Baker faces potential loss of
her current employment should she have to litigate this matter in Florida.   (*Id.* at 13.)

At the hearing, Plaintiff's counsel provided additional information to the Court
concerning Plaintiff's present "status."   Counsel stated that, although Plaintiff has not
dissolved, it is not an ongoing operation and has no employees other than Baker, who is
not being paid.   Counsel also stated that Baker is currently employed elsewhere.   As
noted above, Plaintiff and Baker provided financial information to this Court for review
following the hearing.   Additionally, in the supplemental filing, counsel clarified that
Baker owns 90% of Plaintiff and her husband owns the remaining 10%.   The information
submitted includes financial information for Baker's husband as well.

Given Baker's status as Plaintiff's sole remaining employee, the Court is not persuaded by Defendant's argument that her financial situation is not relevant because she has not been personally named.  Such an argument ignores the practical reality that companies are only able to act through human beings.

"A court may consider whether litigating in a particular forum would cause a party to suffer a hardship, such as from significant expense."  *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp.2d 42, 48 (D. D.C. 2011).  "A disparity in size and financial status may suggest a finding of inconvenience if the party presents convincing evidence that its financial position makes it incapable of litigating in the proposed forum."  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp.2d 627, 639 (E.D. Va. 2003); *accord Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *6 (S.D. N.Y. Sept. 24, 2007) ("Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." (quotation omitted)).

Given that each party anticipates needing to incur expenses related to witness travel no matter where this matter is venued, the Court finds the fact of such expenses neutral.  *See Westrick*, 771 F. Supp.2d at 28 ("However, unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." (quotation omitted)).  The Court has reviewed tax documents, balance sheets, and income statements of Plaintiff, Baker, and Baker's husband, however, and it is clear to this Court that litigating this matter in Florida is cost-prohibitive for Plaintiff.  Defendant has not made a claim of similar hardship.

Defendant cites *Riley v. Trident Seafoods Corp.*, No. 11-cv-2500 (MJD/AJB) (Report & Recomm. at 9, Jan. 9, 2012, ECF No. 16), *adopting report and recommendation*, (Order, Jan. 26, 2012, ECF. No. 17), for the proposition that "the expense of travel alone does not deprive [a party] of a meaningful day in court." Riley involved a venue selection clause and the court determined that "[e]nforcement of the venue selection clause is not unreasonable under the circumstances." (*Id.*) Here, there is no venue selection clause.

The Court finds that Plaintiff has demonstrated serious economic hardship and concludes that this factor weighs in favor of Plaintiff.

### 2.  Convenience of Witnesses

"The convenience-of-witnesses factor generally is regarded as the most important in the inquiry.  In analyzing this factor, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Klatte v. Buckman, Buckman & Reid, Inc.*, No. 13-cv-3109 (RHK/SER), ___ F. Supp.2d ____, 2014 WL 359380, at *2 (D. Minn. Feb. 3, 2014) (citation and quotation omitted).  "In analyzing the convenience-of-witnesses factor, the Court must focus on non-party witnesses, since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Cosmetic Warriors Ltd.*, 723 F. Supp.2d at 1106 (quotations omitted). "When assessing the convenience of the witnesses, the Court considers the number of essential non-party witnesses, those witnesses' locations, and the Court's preference for

live testimony over depositions." *Travel Tags, Inc. v. UV Color, Inc.*, No. 09-cv-1619 (JRT/AJB), 690 F. Supp.2d 785, 792 (D. Minn. 2010).

Defendant identifies six witnesses, three non-party and three party witnesses. With the exception of one of the non-party witnesses who lives in Indiana, the remaining five witnesses all reside in Florida. (Guberman Decl. ¶¶ 8, 9, 10, 11, 12, 13.) The non-party witnesses are Anissa Crowder, John Pearson, and Sherrona Steward. Anissa Crowder previously worked as Defendant's Outbound Sales Manager. (*Id.* ¶ 8.) Her responsibilities included "coordinating and working with staff and outside vendors to implement telemarketing campaigns"; she "served as the primary point of contact for [Plaintiff] and had numerous communications with [Plaintiff] about telemarking services." (*Id.*) It appears that Baker had meetings with Crowder both in Florida and in Minnesota. (*Id.*; *see* Pl.'s Mem. in Opp'n at 3.) Crowder contacted Plaintiff about participating in the Preferred Vendor Program and was the person Baker claims confirmed the parties' agreement. (Pl's Mem. in Opp'n at 2; Baker Aff. ¶ 19.) Defendant asserts that "Crowder's testimony about her interactions with . . . Baker will be central to determining the facts of this case." (Def.'s Mem. in Supp. at 22.)

John Pearson was a college intern with Defendant during the summer of 2010. (Guberman Decl. ¶ 9.) Pearson currently lives in Indiana. (*Id.*) While interning with Defendant, Pearson assisted with "the consolidation of [Defendant's] outsourced telemarketing efforts," including setting up meetings with vendors and may have "responded to questions" from vendors. (*Id.*) Pearson attended a meeting with Plaintiff

in Florida and had discussions with Baker regarding the Preferred Vendor Program. (*Id.*; Baker Aff. ¶¶ 15, 16, 17, 18.)

Sherrona Steward was an administrative assistant to Defendant's current employee Taylor Meringolo. (Guberman Decl. ¶ 10.) Steward "communicated with and provided documents to" Baker. (*Id.*; *see also* Baker Aff. ¶¶ 22, 23.)

Defendant's party witnesses are Sean Gibbons, Mark Guberman, and Taylor Meringolo. Sean Gibbons is Defendant's current Outbound Sales Manager. (Guberman Decl. ¶ 11.) He previously held the position of Outbound Sales Supervisor, where he "directly managed telemarketing vendors," communicated with Baker, and "served as an additional point of contact" for Baker. (*Id.*) Gibbons was Plaintiff's "daily contact" with Defendant. (Baker Aff. ¶ 26.) Mark Guberman is Defendant's Director of Retail Channel Development and, during the relevant period, "was responsible for exploring the possibility of centralizing [Defendant's] outsourced telemarketing efforts." (Guberman Decl. ¶ 12.) Guberman also attended a meeting with Baker and "had further communications with . . . Baker in connection with this dispute." (*Id.*; *accord* Baker Aff. ¶¶ 15, 34, 37, 43, 45, 46, 47, 48, 49.) Taylor Meringolo is Defendant's Director of Marketing. (Guberman Decl. ¶ 13.) Meringolo "oversees [Defendant's] telemarketing efforts for all of Florida." (*Id.*) Meringolo also attended the Florida meeting with Baker and, for a period of time, served as Crowder's director. (*Id.*; *accord* Baker Aff. ¶ 15.)

Plaintiff also identifies three non-party witnesses, all of whom reside in Minnesota: Dee Stasica, Kori Baker, and John Boemer. (Pl.'s Mem. in Opp'n at 14.) Dee Stasica and Kori Baker were "representatives" of Plaintiff that dealt with

Defendant's "account on a daily basis." (*Id.*; Baker Aff. ¶ 11.)  Boemer was Plaintiff's Director of Sales and Marketing.  (Pl's Mem. in Opp'n at 14.)  All three attended a dinner with Baker and Crowder during which Crowder explained the Preferred Vendor Program. (*Id.*; Baker Aff. ¶ 11.)   According to Plaintiff, "[e]ach witness will testify to their individual, unique dealings with [Defendant,] includ[ing] those at the previously described dinner, during other parts of contract formation[,] and during preparations for implementation of the project." (Pl.'s Mem. in Opp'n at 15.)  At the hearing, Plaintiff reiterated that these individuals have knowledge about steps taken by Plaintiff to prepare for the increase in call hours from Defendant under the agreement.  Baker is the sole party witness for Plaintiff.  (*Id.*)

Defendant argues that the testimony of Stasica, Kori Baker, and Boemer will be unnecessarily cumulative because Baker can testify to the dinner meeting with Crowder and "[i]t is not essential for [Plaintiff] to call four witnesses to testify regarding the same conversation."  (Def.'s Mem. in Supp. at 23; *see also* Def.'s Reply at 8-9.)  Defendant also argues that the testimony of these individuals "is far less material to the case than the testimony of . . . Crowder." (Def.'s Mem. in Supp. at 23; *see also* Def.'s Reply at 8.) Defendant argues that "[t]he crux of the dispute is the alleged Preferred Vendor Program and the parties' communications regarding that program," not "daily dealings between [Plaintiff] and [Defendant]." (Def.'s Reply at 8.)

The Court is not persuaded that the testimony of Stasica, Kori Baker, and Boemer will be unnecessarily cumulative.  While it may be unnecessary for each to testify regarding the dinner, it appears that these three individuals may have relevant

information concerning Plaintiff's damages in ramping up operations in anticipation of the allegedly agreed-upon call volume.  In sum, there are four witnesses in Minnesota (one party, three non-party); five witnesses in Florida (three party, two non-party) and one non-party witness in Indiana.  There are challenges with subpoena power no matter the jurisdiction.  *See* Fed. R. Civ. P. 45(c)(1)(A)("A subpoena may command a person to attend a trial, hearing or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

The Indiana witness is neutral; he will be equally inconvenienced no matter the forum.  Although there are three non-party witnesses in Minnesota and only two in Florida, the three other party witnesses in Florida, as opposed to only in one Minnesota, tip this factor in favor of transfer.

### 3.  Interests of Justice

> When analyzing this factor, courts consider (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law.

*Klatte*, 2014 WL 359380, at *4 (citing *Cosmetic Warriors Ltd.*, 723 F. Supp.2d at 1107).

Neither party claims that judicial economy and/or the presence of obstacles to a fair trial weigh in favor of Florida or Minnesota.  While Plaintiff states that it "does not see an obstacle to enforcing its judgment in either district," (Pl.'s Mem. in Opp'n at 18), the Court wonders whether there are any assets of Defendant in this District to attach.  *See Klatte*, 2014 WL 359380, at *4 ("Buckman has no offices in Minnesota and there is

no suggestion it has assets here and hence Plaintiffs appear unable to enforce a judgment against it in this state.  Continued litigation in Minnesota, therefore, would result in the prospect of piecemeal litigation: the instant lawsuit, followed by litigation to enforce any resultant judgment in New Jersey.").

As for conflict-of-law issues and the advantages of having a local court interpret local law, the record is somewhat muddied on this point. Defendant has assumed for purposes of this motion that Minnesota law applies.  (Def.'s Mem. in Supp. at 11 n.6.) The parties have not briefed a choice-of-law analysis and, at this juncture, the Court finds that there is not enough information in the record to determine whether these considerations weigh in favor of or against transfer and, therefore, they are neutral.

The second factor—Plaintiff's choice of forum—weighs against transfer. "[F]ederal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l, Inc.*, 119 F.3d at 696; *Clergy Fin., LLC*, 598 F. Supp.2d at 994 (same).  "Further, courts in this District have repeatedly found that deference to the plaintiff's choice of forum is appropriate where the plaintiff resides in the chosen forum." *Travel Tags, Inc.*, 690 F. Supp.2d at 795.  Moreover, Defendant purportedly reached out to Plaintiff, a Minnesota company, to do business and the alleged injury as a result of Defendant's failure to abide by the parties' agreement occurred in Minnesota.

The third factor—cost comparison—is significant in this case.  As already discussed there are a number of non-party witnesses on each side that will likely require the opposing party to "incur expenses for airfare, meals, and lodging" whether this matter is litigated in Florida or Minnesota. *In re Apple, Inc.*, 602 F.3d at 913.  Based on the

financial information provided to this Court, however, it is clear that such expenses result in a more severe hardship to Plaintiff than they do to Defendant.  It is quite possible that transferring this matter to Florida would deny Plaintiff any sort of redress.

Finally, Defendant repeats its earlier argument that documents relevant to this matter are in Florida, "including documents relating to its prior agreements with [Plaintiff], its use of [Plaintiff] to conduct telemarketing complains, communications with [Plaintiff], and exploration of the Preferred Vendor Program."  (Def.'s Mem. in Supp. at 28.)

In light of the considerable deference given to Plaintiff's choice of forum and Plaintiff's substantiation of its economic hardship claim as balanced against the relative neutrality of the remaining factors, the Court finds that the interests of justice weigh against transfer.

### 4.  Conclusion

In sum, only the convenience of witnesses tips in favor of transferring this matter to Florida and even that factor does not strongly weigh in favor of transfer when taking into account that each party has identified the same number of non-party witnesses and the remainder of Defendant's witnesses, albeit residing in Florida, are party witnesses. The remaining two factors, the convenience of the parties and the interests of justice, weigh in favor of keeping this action in Minnesota.  On balance, the Court concludes that Defendant has not met the heavy burden to show that this case should be transferred and, therefore, the Court recommends that Defendant's request to transfer this matter to the Middle District of Florida be denied.

## V. RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint and to Transfer Venue (ECF No. 16) be **GRANTED IN PART** and **DENIED IN PART** as set forth above.


Dated: August___4__, 2014                                    *s/ Tony N. Leung*
                                                              Tony N. Leung
                                                              United States Magistrate Judge
                                                              for the District of Minnesota


                                                              *Dial Technology, LLC v. Bright*
                                                              *House Networks, LLC*
                                                              Case No. 13-cv-2995 (MJD/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **August 19, 2014**.